GEORGE F. HAWKS, plaintiff in error, *vs.* WARREN & THOMAS D. HAWKS, defendants in error.

When A sold land to B, taking his note for the purchase-money, secured by a mortgage on the land, which was duly recorded, and B sold a portion of the land to C, who paid a part of his purchase-money to B, and for the balance joined with B in a note to A, secured by a mortgage to A on the lands of both B and C, A giving up the old note and mortgage:

*Held*, That on the foreclosure of the mortgage, the *fi. fa.* may sell the land of C, notwithstanding C may have had the same set off as his homestead. Whether the purchase-money debt of C to B was satisfied by novation is not material. The note and mortgage given by C to A was for the removal of an encumbrance from the land, and brought the land within the exceptions to the homestead clause of the Constitution of 1868.

Homestead.    Encumbrance.    Novation.    Tried before Judge ANDREWS.    Oglethorpe Superior Court.    October Term, 1870.

On the 17th day of September, 1869, a mortgage *fi. fa.*, issued on May 8th, 1870, based upon a mortgage executed by Henry Hawks and George F. Hawks on February 15th, 1867, in favor of Warren Hawks and Thomas D. Hawks, was levied upon the land described in said mortgage.

George F. Hawks filed an affidavit of illegality, upon the ground that two hundred and ninety-four and a half acres of said land levied on, together with other land belonging to

him, making in all four hundred and eighteen acres, was set apart to him as a homestead on May 22d, 1869.

It appeared from the evidence that the plaintiffs in *fi. fa.*, as administrators, on the first Tuesday in January, 1866, sold one thousand acres of land to the defendant, Henry Hawks, and one James Smith, who gave their joint note, with mortgage, in payment of the balance of the purchase-money, at the same time receiving a deed to the property. That on February 15th, 1867, Smith and said Henry Hawks divided the land, the former taking four hundred acres, paying in full for his share, the latter taking six hundred acres. That Henry Hawks sold to the defendant, George F. Hawks, two hundred and ninety-four and a half acres, the land in dispute, and executed to him a deed; that on the same day, to-wit, February 15th, 1867, the note and mortgage aforesaid were delivered up, and a note and mortgage given by the defendants on the whole six hundred acres. That George F. Hawks never gave Henry Hawks any note for said land, and received no other consideration for his undertaking in the last note mentioned except the two hundred and ninety-four and a half acres of land aforesaid; that said two hundred and ninety-four and a half acres of land was set apart to George F. Hawks as a homestead on May 22d, 1869.

The jury found the two hundred and ninety-four and a half acres aforesaid not subject to the execution.

Plaintiff in *fi. fa.* moved for a new trial upon the following grounds, to-wit:

1st. Because the Court refused to charge the jury "that if they believed that the consideration for which George F. Hawks signed the note upon which the *fi. fa.* levied is based, is the purchase-money of the land levied on and set apart as a homestead for the said George, that they must find the land subject to the said *fi. fa.;* that if they believed that the land which has been set apart as a homestead for George F. Hawks was the consideration for which George F. Hawks signed the note upon which the *fi. fa.* levied is based, they must find the land levied on subject to said *fi. fa.*"

Hawks *vs.* Hawks.

2d. Because when plaintiffs in *fi. fa.* requested the Court to charge "that any one holding a debt for the purchase-money of land, whether the land of the holder or of any one else, can enforce the claim against the land," the Court charged the jury "that any person having legally the control of the debt due Henry Hawks by George F. Hawks, could enforce it against the land bought by George of Henry; but this *fi. fa.* is levied on six hundred and twenty-two acres of land, and George bought of Henry less than three hundred acres. In this there has been no transfer of a debt of Henry against George to any other person."

3d. Because the Court erred in the following charge to the jury: "that the consideration of the note upon which the *fi. fa.* levied is founded was the extinguishment of the note given by Henry Hawks and James Smith to the plaintiffs, as administrators."

4th. Because the verdict is contrary to law and the evidence.

The Court sustained the motion and ordered a new trial. The defendant excepted and assigns said ruling as error.

J. D. MATHEWS, for plaintiff in error. The doctrine of novation is conclusive in this case: 1st Pars. on Con., 187 *et seq.;* 40th Ga. R., 423; *Ib.*, 193, 487.

W G. JOHNSON; JOHN C. REID; H. Y. MORTON; E. C. SHACKLEFORD, for defendants. 1st. The decision of the Court below granting a new trial was correct, because the consideration for which George F. Hawks signed the note upon which the judgment and *fi. fa.* were rendered, was the land levied upon and now claimed as a homestead by said George F. Hawks. The land is, therefore, subject to the payment of said *fi. fa:* Constitution of Georgia of 1868, article *Homestead;* 22d Howard, 327; 19th Ga. R., 556; 40th Ga. R., 486; Revised Code, secs. 3031 and 2816; 39th Ga. R., 388; 5th Ga. R., 356; 23d Ga. R., 479; 7th Ga. R., 67, 68; 10th Peters, 641 to 646; 4th Kent's Coms., 152, 153. 2d. The

note sued on was not a novation: See 9th Ga. R., 240, 12th head note; see, especially, Lott *vs.* Dysart and Vincent, decided by the Supreme Court of Georgia the 9th day of May, 1872, from Bartow county; see, also, 16th Ga. R., 190, 1st head note, under which Warren and Thomas D. Hawks could have sued the note of George F. Hawks in their representative or individual character. 3d. This debt of George F. Hawks is a resulting trust, for the benefit of Warren and Thomas D. Hawks: See Hill on Trustees, pages 212, 213, 239, 240, 247, 259, 264; see, also, 2d Story's Eq. Jurisprudence, secs. 1258, 1259, 1196 to 1233, 1040, 1941, 973, 789, 790, 791, 1212, 1218, 1219. 4th. Was not the note sued on given to remove an encumbrance on the land made by the first note? If so, the land is liable to the *fi. fa:* See 39th Ga. R., 466. 5th. Change of notes is no waiver of purchase-money: See 23d Ga. R., 238; *Ib.*, 341, 342 and 3d head note on pages 342 and 343.

McCay, Judge.

We do not care to go into the question so elaborately argued at the hearing in this case, to-wit: whether the note given by the two Hawks to the administrator was a novation of the purchase-money contracts, as it is clear to us that this land is subject to the mortgage *fi. fa.* for another reason, even although the novation were complete. One of the exceptions in the homestead law is, it is true, where the debt on which the judgment is founded is a debt contracted for the purchase-money of the land; but another exception is where the judgment is founded on a debt contracted for the removal of an encumbrance from or upon the land. This judgment is founded upon a note, secured by mortgage, the object and consideration of which was to take up and relieve the land from a mortgage or encumbrance existing upon it at the time George Hawks bought it from his brother, to-wit: the mortgage made by the purchasers at the administrator's sale.

We decided, in the case of *Stephens vs. Kelly,* 39 *Georgia,*

466, that a debt contracted to take up an execution existing as a lien superior at *the time* to the homestead was a debt contracted for the removal of an encumbrance, and that the homestead from which the encumbrance was removed was subject to it. This is a stronger case than that. George Hawks, when he bought this land, knew there was a mortgage upon it—an encumbrance that would defeat his homestead until it was removed. He joins in a new mortgage with his brother for the special purpose of removing it. Clearly, as it seems to us, this is within the very letter and spirit of the exception. The intent was to put it in the power of the owner of the land, either before or after the homestead was laid off, to change an encumbrance of one kind to an encumbrance of another, or to change the party to whom the encumbrance belonged.

It is said that the exception was put in to aid the operations of Loan and Building Associations, so that men of limited income might become members of such associations, borrow money and take up encumbrances that might exist on their property. The principle is the same in this case as in the cases of such borrowings. George Hawks preferred to give the present mortgage and remove the other. The other was a clear encumbrance, superior to his or his family's claim to a homestead. It is within the very letter, as well as the spirit, of the exception.

Judgment affirmed.